*459 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Ahmad Muhammad, an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime. In re: Muhammad, 04-1643 (La.7/9/04), 878 So.2d 515.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1984. In October 1990, respondent received an admonition for his failure to cooperate with the ODC in a disciplinary investigation. In November 1990, respondent received a second admonition for his failure to cooperate with the ODC in a separate investigation.
In September 1991, respondent pled nolo contendere to one count of felony unauthorized use of a movable arising out of his conversion of approximately $5,000 in client funds. On November 29, 1993, this court placed respondent on interim suspension based on his conviction. In re: Muhammad, 629 So.2d 408 (La.1993). Thereafter, this court suspended respondent from the practice of law for three years, retroactive to the date of his interim suspension, for conversion of client funds. In re: |2Muhammad, 95-0515 (La.6/2/95), 655 So.2d 325. In 1997, respondent was reinstated to the practice of law. In re: Muhammad, 97-1335 (La.6/30/97), 696 So.2d 1001.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed four sets of formal charges against respondent, consisting of a total of five counts of misconduct. Three hearing committees considered the formal charges before they were consolidated by the disciplinary board, which then filed in this court a single recommendation of discipline encompassing all four sets of formal charges.

02-DB-131

The Wilson Matter

Respondent represented Eugene Wilson in a criminal matter in the 13th Judicial District Court. He was cited six times for contempt of court for his failure to appear in court on October 4, 2001, October 29, 2001, November 14, 2001, November 16, 2001, November 27, 2001, and December 18, 2001. On January 4, 2002, the judge found respondent guilty of six counts of contempt of court and sentenced him to pay fines and serve time in the Evangeline Parish jail. Respondent was ordered to report to jail on January 11, 2002 to commence serving his sentence, but he failed to do so. He was also ordered to appear in court on January 11, 2002 to answer a seventh contempt of court charge for his failure to appear on January 4, 2002, but he failed to do so. Accordingly, the judge found respondent guilty of an additional instance |3of contempt of court, sentenced him to an additional 60 days in jail, and issued a warrant for his arrest. The judge also ordered that extradition proceedings against respondent commence immediately as he was residing in Mississippi at the time.

The Gallow Matter

Elrick Gallow, respondent’s nephew, was charged with felony aggravated battery, *460 armed robbery, and kidnapping, and respondent represented him in the criminal case in the 13th Judicial District Court. The victim in the case was a cousin of both respondent and Mr. Gallow, and respondent failed to disclose to Mr. Gallow that he had a close relationship with the mother of the victim. Because of this relationship, respondent refused to cross-examine the victim at the trial. Instead, on November 23, 1999, the second day of Mr. Callow’s trial, respondent convinced Mr. Gallow to plead guilty to aggravated second degree battery and second degree kidnapping and to accept a sentence of thirty years in prison. In an affidavit signed by respondent on February 15, 2000, respondent admitted that he intentionally gave Mr. Gallow incorrect advice concerning the evidence he possessed to impeach the testimony of the victim. Respondent further admitted he failed to advise Mr. Gallow that he would have a right to appeal any errors that occurred in the trial if he was convicted and billed as a habitual offender. The affidavit also indicated that Mr. Gal-low pled guilty because of respondent’s erroneous advice.
In a sworn statement given to the ODC on October 24, 2001, respondent indicated that he agreed to represent Mr. Gallow because he did not want him to be represented by a public defender. Respondent also stated that he thought they could work out a plea bargain, but Mr. Gallow would not accept twenty-five years in prison; thus, the case went to trial. Respondent felt as if he would be abandoning his nephew |4if he withdrew at this point. However, he also did not like what his nephew had done to their cousin or the other criminal conduct his nephew had told him he had engaged in in the past. Respondent felt Mr. Gallow should be punished, and because of his religious beliefs, respondent did not feel comfortable trying to impeach the victim’s testimony. Thus, he convinced Mr. Gallow to plead guilty.

Fmmal Charges

In December 2002, the ODC filed two counts of formal charges against respondent in 02-DB-031. In the Wilson matter, the ODC alleged that respondent’s conduct violated Rules 1.1(a) (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 3.2 (failure to make reasonable efforts to expedite litigation), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. In the Gallow matter, the ODC alleged that respondent violated Rules 1.1(a), 1.2(b) (limiting the scope of the representation without a client’s consent), 1.3, 1.4(b) (failure to communicate with a client), 1.7(b) (conflict of interest), 2.1 (failure to exercise independent professional judgment in representing a client), 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal), 3.4(c), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
Respondent initially failed to answer the formal charges, and the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). However, |r,upon the filing of an answer by respondent, the deemed admitted order was recalled and the matter proceeded to a formal hearing on the merits.
Respondent appeared at the hearing with counsel; however, his attorney was allowed to withdraw from the representation at the beginning of the hearing due to *461 his status as a potential witness in the matter. Respondent requested a continuance to obtain new counsel, but the committee chair denied the motion because respondent knew of the conflict long before the hearing and had ample time to obtain new counsel. Respondent voiced a general objection to the hearing going forward and a general objection to any of ODC’s exhibits being introduced, but his objections were overruled. Respondent did not testify before the committee, nor did he call any witnesses or introduce any evidence on his own behalf.
During a break in the hearing, respondent was arrested on the outstanding contempt of court warrant subject of the Wilson matter. In a post-hearing memorandum, respondent argued that his arrest during the hearing tainted the hearing. He also re-urged his argument that the hearing should have been continued so he could obtain new counsel. Nonetheless, he admitted that he could have handled the Wilson case and the Gallow case “with better judgment and in a different manner.” He suggested a six-month suspension was appropriate for his conduct, while the ODC argued that permanent disbarment is warranted.

Hearing Committee Report

After reviewing the testimony and the evidence presented at the hearing, as well as the post-hearing memoranda, the hearing committee made the following findings of fact and law:
| {{The Wilson matter — Because of his repeated failures to appear in court and his contempt judgments, respondent was not able to provide competent representation to his client. Respondent had multiple obligations to appear and elected not to do so. It took more than one year from conviction to final sentencing of Mr. Wilson. Respondent delayed and refused to participate in the court proceedings and made a conscious effort to prevent the diligent and prompt representation of his client. Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rule 8.4(c), which the committee did not find was violated.
The Gallote matter — Respondent admitted under oath in his affidavit to the following: 1) Mr. Gallow pled guilty involuntarily because respondent was laboring under a serious conflict of interest that prevented him from rendering effective assistance of counsel; 2) Respondent failed to inform Mr. Gallow of a close family relationship to his victim, and respondent admits that the relationship compromised his representation of Mr. Gallow because of his divided loyalties; 3) Respondent failed to advise Mr. Gallow that he would not be able to cross-examine the victim because of his conflicting relationship with the victim’s mother; 4) Respondent refused to cross-examine the victim and advised Mr. Gallow to plead guilty instead; and 5) Respondent intentionally gave Mr. Gallow incorrect advice concerning evidence he possessed to impeach the victim. Either the affidavit is false and was submitted to the court by way of deception, or the affidavit is true and Mr. Gallow was deceived. Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
In aggravation, the committee found pri- or disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victim,_Jjand substantial experience in the practice of law (admitted 1984). The committee found no mitigating factors present.
Under these circumstances, the committee recommended that respondent be sus *462 pended from the practice of law for three years.
Both respondent and the ODC filed objections to the hearing committee’s report and recommendation.
Respondent again argued that he was denied his right to counsel at the hearing, was denied a continuance to obtain new counsel, and was prejudiced by his arrest during the hearing. Thereafter, respondent requested that argument before the disciplinary board be continued because he was then incarcerated in Mississippi and had not yet obtained counsel. The disciplinary board denied the continuance on the ground that respondent had not shown that he had diligently sought counsel or that his incarceration prevented him from obtaining counsel. However, in August 2004, the board stayed the matter for future consolidation with the pending formal charges in 04-DB-071.

04-DB-071

In 1999, a guardianship estate was opened in the Chancery Court of Jefferson County, Mississippi for the benefit of Hillary White, III, a minor. In September 2001, respondent prepared and filed into the court record an order authorizing certain expenditures on behalf of the minor, including the sum of $800 payable to George West, a Natchez attorney, for attorney’s fees. Although the order was purportedly signed by Chancery Court Judge Kenneth Middleton, the judge’s signature was a forgery, a fact of which respondent was aware when he submitted the order to the | scourt for filing.[1] Moreover, respondent obtained the $800 check payable to Mr. West and presented it for payment, knowing that Mr. West’s endorsement had been forged on the check.
On June 18, 2003, respondent pled guilty to the offense of uttering a forgery, a felony, in the Circuit Court of Jefferson County, Mississippi. Respondent failed to appear for sentencing on August 11, 2003, and a bench warrant was issued for his arrest. On June 21, 2004, respondent was sentenced to serve three years in the custody of the Mississippi Department of Corrections, with credit for time served, and the remainder of the sentence suspended, subject to a three-year period of supervised probation with conditions. Respondent was also ordered to make restitution of $19,600 to the guardianship account of Hillary White.

05-DB-004

Respondent represented Toby Brum-field in a personal injury matter arising from a July 1997 automobile accident. The Louisiana Medical Clinic treated Mr. Brumfield’s injuries, and respondent guaranteed, in writing, payment of his bill from any settlement or judgment in the case.
In November 1997, respondent settled Mr. Brumfield’s case. Mr. Brumfield received some portion of the settlement proceeds, but respondent did not pay the Louisiana Medical Clinic’s $1,775 bill from the settlement proceeds.

Formal Charges

In July 2004, the ODC filed one count of formal charges against respondent in 04-DB-071, alleging that his conduct violated Rules 8.4(b) (commission of a criminal | flact that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) of the Rules of Professional Conduct. Respondent initially failed to answer the formal charges, and the factual allegations contained therein were deemed admitted and proven by clear and convine- *463 ing evidence. However, upon the filing of an answer by respondent, the deemed admitted order was recalled.
In January 2005, the ODC filed one count of formal charges against respondent in 05-DB-004, alleging that his conduct violated Rules 1.15(d) (failure to remit funds to a client or third party) and 8.4(c) of the Rules of Professional Conduct. Respondent answered the formal charges, indicating that he would reimburse the Louisiana Medical Clinic if the debt was still outstanding.
In February 2005, the hearing committee chair consolidated 04-DB-071 and 05-DB-004. The consolidated matters then proceeded to a formal hearing on the merits. At the hearing, the ODC introduced documentary evidence and called John McClendon, the attorney for Louisiana Medical Clinic, and Toby Brumfield to testify before the committee.
Respondent represented himself and participated in the hearing via telephone.[2] He did not call any witnesses to testify before the committee and did not testify on his own behalf or on cross-examination by the ODC. Although respondent was given extra time to submit documentary evidence in mitigation, he failed to do so.

Hearing Committee Report

After reviewing the testimony and evidence presented at the hearing, the hearing committee made the following findings of fact and law:
|inRespondent pled guilty to forgery, a felony, with full knowledge of the consequences of his actions. The crime to which he pled guilty involved dishonesty, fraud, deceit, and misrepresentation. Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges in 04-DB-071.
Respondent expressly represented to Mr. Brumfield’s treating physician that his medical bill would be paid from any settlement or judgment obtained in the case. No such payment was ever made and no explanation was offered. Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges in 05-DB-004.
In aggravation, the committee found pri- or disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. The committee noted that respondent had the opportunity to provide evidence of mitigating circumstances but failed to do so.
Citing Guideline 9 (instances of serious attorney misconduct or conviction of a serious crime preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime) of the permanent disbarment guidelines listed in Supreme Court Rule XIX, Appendix E, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

05-DB-056

Respondent prepared a bankruptcy petition in the name of John Lavabais, without Mr. Lavallais’ authorization, fraudulently *464 claiming that Mr. Lavabais had an Inownership interest in respondent’s home. Respondent filed the fraudulent bankruptcy petition in the United States Bankruptcy Court for the Middle District of Louisiana in an attempt to stop the foreclosure of his home.
In November 2004, respondent pled guilty to one count of bankruptcy fraud in the United States District Court for the Middle District of Louisiana. In March 2005, he was sentenced to serve thirty months in the custody of the U.S. Bureau of Prisons, which sentence was to begin immediately following his release from the Hinds County (Mississippi) Restitution Center, where he was serving his sentence imposed in connection with his conviction of forgery.

Formal Charges

In May 2005, the ODC filed one count of formal charges against respondent, alleging that his conduct violated Rule 8.4(b) of the Rules of Professional Conduct.
In lieu of an answer to the formal charges, respondent filed a pre-hearing memorandum, in which he addressed the formal charges and argued that a hearing was premature because he had appealed his conviction to the United States Fifth Circuit Court of Appeals. Accordingly, the hearing committee chair continued the hearing without date. On November 28, 2006, the United States Fifth Circuit Court of Appeals dismissed respondent’s appeal, stating that “the record discloses no non-frivolous issue for appeal.” Thereafter, the hearing committee set the matter for a formal hearing on the merits.
Respondent then argued that the hearing should be stayed because he had filed a petition for writ of certiorari with the United States Supreme Court. However, respondent submitted the petition in an incorrect format and did not correct the form, despite notices to do so; therefore, the Supreme Court delayed acting upon the |12petition. Accordingly, the hearing committee chair denied respondent’s motion for stay, and a hearing was conducted in August 2007. Respondent declined to participate in the hearing.[3]
Following the hearing but before the hearing committee filed its report and recommendation, respondent filed in this court a “Motion to Set Aside Finding of Hearing Committee.” In his motion, respondent argued that the hearing committee recommendations should be set aside in all four sets of formal charges. With respect to the first three sets of formal charges, he argued that he was deprived of the opportunity to be represented by counsel and that the ODC had him arrested during the first hearing. He also argued that the disciplinary proceedings should be continued until the United States Supreme Court acted on his writ application, which he resubmitted to the Supreme Court in the correct format on September 14, 2007, more than one month after the hearing in 05-DB-056. However, respondent failed to inform this court that the United States Supreme Court denied his petition for writ of certiorari on October 15, 2007, two weeks prior to the filing of the motion. See Muhammad v. United States, — U.S. -, 128 S.Ct. 459, 169 L.Ed.2d 321 (2007). We denied respondent’s motion on *465 November 21, 2007. In re: Muhammad, 07-2124 (La.11/21/07), 967 So.2d 531.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:
1) Respondent caused a fraudulent bankruptcy petition to be filed;
| ia2) Respondent acknowledged that the bankruptcy petition was filed to defraud the company holding the mortgage on his home;
3) Respondent acknowledged that he filed the bankruptcy petition with the specific intent to defraud;
4) Respondent entered a plea of guilty to felony bankruptcy fraud;
5) The felony of bankruptcy fraud involves deceit, misrepresentation, and specific intent to defraud;
6) As a result of his guilty plea, respondent was sentenced to incarceration for thirty months;
7) The criminal act to which respondent pled guilty is one that reflects adversely on his honesty, trustworthiness, and fitness as a lawyer; and
8) Respondent’s conduct indicates that he is a danger to the public and to the practice of law.
Based on these findings, the committee found that respondent violated Rule 8.4(b) of the Rules of Professional Conduct. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is disbarment.
In aggravation, the committee found pri- or disciplinary offenses, dishonest or selfish motive, and a pattern of misconduct. The committee found no mitigating factors present.
Turning to the issue of an appropriate sanction, the committee looked to the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E. Relying upon Guideline 2 (intentional corruption of the judicial process, including but not limited to bribery, perjury, and subornation of perjury) and Guideline 9, the committee recommended that respondent be permanently disbarred.
114In lieu of filing an objection to the hearing committee’s recommendation, respondent filed a “Motion to Set Aside Finding of Hearing Committee and to Continue Disciplinary Proceedings Pending Conclusion of All Appeals in Accordance with Louisiana Supreme Court Rule XIX, Section 19 c.” In this motion, filed with the disciplinary board on October 2, 2008, after oral argument was conducted before a panel of the disciplinary board,[4] respondent requested that the committee’s findings be set aside because the hearing was held while his petition for writ of certiorari was pending before the United States Supreme Court.[5] Further with respect to his bankruptcy fraud conviction, respondent indicated that he had filed a “Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255,” which he filed with the United States District Court for the Middle District of Louisiana. Thus, respondent requested that the disciplinary proceedings *466 be continued until all appeals of his conviction are exhausted. After considering respondent’s motion and the ODC’s response, the disciplinary board denied the motion on October 9, 2008.
Respondent also filed a notice of removal in the United States District Court for the Middle District of Louisiana to remove 05-DB-056 from the jurisdiction of the Louisiana Attorney Disciplinary Board. The district court judge, citing Alaska Bar Ass’n v. Dickerson, 240 F.Supp. 732 (D.Alaska 1965), determined that “the disciplinary proceeding is not a civil action within contemplation of the federal removal statute.” Accordingly, the judge remanded the matter back to the Louisiana Attorney Disciplinary Board. Respondent then filed a notice of appeal to the United Instates Fifth Circuit Court of Appeals, the status of which is unclear from the record of these disciplinary proceedings.
On November 13, 2008, prior to the filing of the disciplinary board’s consolidated recommendation in this court, respondent filed with this court a “Motion to Deem Matters Admitted, to Compel the Louisiana Disciply [sic] Board, and to Continue Disciplinary Proceedings Pending Conclusion of All Appeals in Accordance with Louisiana Supreme Court XIX, Section 19 c.” In this motion, respondent argued that the allegations he made in his October 2, 2008 motion filed with the disciplinary board should be deemed admitted on the ground that the ODC and the board did not specifically deny the allegations. He also urged this court to set aside the hearing committee’s findings and recommendation and continue the disciplinary proceedings until all of his appeals have been exhausted. The ODC opposed the motion, arguing that respondent’s conviction became final upon the denial of his petition for writ of certiorari.
Before we could consider respondent’s motion, the disciplinary board filed on November 20, 2008 its recommendation of discipline in the instant matter.

02-DB-131, 04-DB-071, 05-DB-004, & 05-DB-056

Disciplinary Board Recommendation

After reviewing the consolidated matters, the disciplinary board generally accepted the hearing committees’ factual findings, and agreed that respondent violated the Rules of Professional Conduct as charged. The board determined that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. He acted knowingly and intentionally, causing extensive harm. 11fiRelying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
In aggravation, the board found prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, substantial experience in the practice of law, and illegal conduct. The board found no mitigating factors present.
Further citing Guidelines 2 and 9 of the permanent disbarment guidelines, the board recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is wheth *467 er respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990).
In the instant case, respondent stands convicted of forgery and bankruptcy fraud. These crimes clearly warrant serious discipline. Therefore, the only remaining issue is the appropriate sanction for respondent’s misconduct. The resolution of that issue depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
| l7The record supports the board’s determination that respondent’s misconduct was knowing and intentional. He caused harm to his clients, the public, the legal system, and the profession. The aggravating factors found by the board are supported by the record. We find no mitigating factors present. Under the ABA’s Standards for Imposing Lawyer Sanctions, the applicable baseline sanction is disbarment.
The sole remaining question for our consideration is whether respondent’s misconduct is so egregious that he should be permanently prohibited from seeking readmission to the practice of law. The sanction of permanent disbarment is set forth in the 2001 amendment to Supreme Court Rule XIX, § 10 and § 24. In our commentary accompanying the amendment, we stated, in pertinent part:
In the public interest, the Court has amended Louisiana Supreme Court Rule XIX to codify Permanent Disbarment as an available sanction for attorney misconduct. While the Court has always had the discretion to deny an application for readmission after the requisite five (5)-year waiting period after disbarment, an attorney who is permanently disbarred under these circumstances will be prohibited from applying for readmission to the bar. These amendments reflect the judgment of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case and in consideration of the guidelines in Appendix E to the Rules of Lawyer Disciplinary Enforcement.
In Appendix E, we set forth several guidelines illustrating the types of cases which might warrant permanent disbarment. We explained that these guidelines were not intended to bind the court in its decision making, but to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.”
Guideline 2 of Appendix E provides that an attorney’s “[i]ntentional corruption of the judicial process” is a ground for permanent disbarment. Clearly, respondent’s | ^convictions of forgery and bankruptcy fraud involve conduct which demonstrates an intent to corrupt the judicial process.
Also pertinent in this case is Guideline 9, which applies to “[instances of serious attorney misconduct or conviction of a serious crime, when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime.” Respondent’s current misconduct was preceded by his three-year suspension in 1995 based on serious misconduct involving conversion of client funds.
We do not impose the sanction of permanent disbarment lightly. In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d *468 934. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent’s criminal convictions reveal he intentionally engaged in conduct that was calculated to frustrate the administration of justice. Moreover, we find it particularly disturbing that these actions occurred after respondent had been disciplined by this court for other serious misconduct in 1995. Rather than learning from that discipline, respondent began engaging in the misconduct which forms the basis of these proceedings less than two years after we reinstated him. Such actions are an affront to this court, which demands high standards of honesty by attorneys licensed to practice in this state. See Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). Respondent’s conduct convincingly demonstrates that he does not possess the requisite moral fitness to practice law in this state. He must be permanently disbarred.
| |flBased on this reasoning, we will accept the disciplinary board’s recommendation and impose permanent disbarment.[6]
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that the name of Ahmad Muhammad, Louisiana Bar Roll number 14468, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. During his guilty plea, respondent denied knowing who signed the order; he would only admit that he knew it had not been signed by Judge Middleton.

. Respondent requested a continuance because the hearing was scheduled to take place while he was still incarcerated in Mississippi. Thereafter, respondent failed to participate in a telephone conference with the ODC and the hearing committee chair to discuss his motion for continuance. The committee chair denied the motion but ordered that arrangements be made for respondent to participate via telephone.

. In its report, the hearing committee determined that respondent 1) acknowledged he received proper notice but did not intend to participate in the hearing; 2) claimed he had retained counsel but refused to identify his counsel; and 3) provided a written acknowledgment that he did not intend to participate in the hearing. Nevertheless, a conference call link was established in order for him to participate in the hearing. Neither he nor his attorney used die link to participate in the hearing.

. Respondent did not appear for oral argument before the panel.

. As previously noted, the United States Supreme Court did not accept respondent's writ application for filing until September 14, 2007, when he finally submitted it in the correct format. This was more than one month after the hearing took place. The Supreme Court denied certiorari on October 15, 2007. The hearing committee did not file its report and recommendation with the disciplinary board until June 2, 2008.

. Because the imposition of permanent disbarment is the most severe sanction that can be imposed on respondent, having the effect of forever removing him from the bar of this state, we find it is not necessary to discuss the misconduct charged in the remaining counts of the formal charges. In re: Stephens, 07-0180 (La.4/27/07), 955 So.2d 140, citing In re: O'Keefe, 03-3195, pp. 11-12 (La.7/2/04), 877 So.2d 79, 86.