*748
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 | ]This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Gregory Van Judice, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
 
 In re: Judice,
 
 08-0340 (La.2/20/08), 974 So.2d 1280.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 The ODC filed two sets of formal charges against respondent, consisting of a total of seven counts of misconduct. Respondent failed to answer either set of formal charges. ■ Accordingly, the factual allegations contained therein were deemed admitted
 
 and
 
 proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearings were held, but the parties were given an opportunity to file with the hearing committees written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration in either matter.
 

 The formal charges were considered by separate hearing committees before being consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing both sets of formal charges.
 

 U08-DB-028
 

 Counts I & III
 

 Respondent represented Betty Bertrand in a personal injury matter arising from a May 2004 automobile accident. On November 5, 2004, Dr. Robert Hanks, Ms. Bertrand’s chiropractor, sent respondent notice of his medical provider lien. Ms. Bertrand’s final bill for her treatment with Dr. Hanks was $801.
 

 Eventually, Ms. Bertrand’s case settled for $8,500, and respondent deposited the funds into his trust account on May 11, 2005. Respondent disbursed the funds to himself and Ms. Bertrand without withholding funds for or paying Dr. Hanks.
 
 [1]
 

 
 *749
 
 In August 2005, after learning of the settlement, Dr. Hanks filed a disciplinary complaint against respondent. In response to the complaint, on September 13, 2005, respondent paid Dr. Hanks $801 from his operating account.
 

 In connection with its investigation of Dr. Hanks’ complaint, the ODC’s auditor reviewed respondent’s trust account for the period of January 1, 2004 through December 31, 2005. The auditor’s August 21, 2007 report revealed that between February 2004 and December 2005, settlement proceeds for six of respondent’s clients were deposited into his trust account. Respondent withheld a total of $10,613.57 from those settlement funds to pay third party medical providers. However, respondent failed to disburse those funds to said medical providers. He also failed to properly maintain those funds in his trust account, as the account had a negative balance on several occasions in April, May, and June 2005.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a)(b)(c) (safekeeping property of Isdients or third persons), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 

 Count II
 

 Between January 1, 2004 and December 2005, Trina Pousson and Patty Bertrand worked as secretaries and/or bookkeepers in respondent’s law office. Respondent allowed them access to his trust account and operating account, giving them the authority to prepare checks and reconcile the accounts. However, respondent failed to properly supervise their handling of the accounts.
 

 Respondent alleged that, as a result of his failure to properly supervise the handling of his bank accounts, Ms. Pousson and/or Ms. Bertrand may have embezzled funds from him, which resulted in conversion of client or third-party funds from his trust account. However, the ODC’s auditor was unable to ascertain whether any embezzlement took place and, if so, whether said embezzlement caused the non-payments to third-party medical providers or the negative balances in respondent’s trust account as described above.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a)(b)(c), 5.3 (failure to properly supervise a non-lawyer assistant), and 8.4(a).
 

 Hearing Committee Report
 

 After considering the ODC’s deemed admitted submission in 08-DB-028, the hearing committee made the following factual findings:
 

 Between January 1, 2004 and December 31, 2005, over $10,613.57 in client funds were, at best, commingled and misappropriated and, at worst, converted by | respondent from his trust account. The negative balances in the trust account in April, May, and June 2005 were, by necessity, the result of respondent withdrawing funds from the account that did not belong to him. Respondent wrote letters to the ODC and gave a sworn statement in which he attempted to shift responsibility for these acts to a former employee whom he contended embezzled funds from his office. He also blamed his inattention on treatment he was receiving for cancer. However, the committee noted that respondent provided no evidence of the alleged embezzlement or of his illness.
 
 [2]
 
 The ODC’s au
 
 *750
 
 ditor was also unable to determine if any embezzlement occurred.
 

 The committee’s report did not specifically address which provisions of the Rules of Professional Conduct respondent violated. The committee determined that respondent acted knowingly but did not greatly harm his clients. Respondent also fully reimbursed Dr. Hanks without the necessity of extensive disciplinary or legal proceedings. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the baseline sanction is disbarment.
 

 In aggravation, the committee found multiple offenses, vulnerability of the victim, and substantial experience in the practice of law (admitted 1996). The committee found the following mitigating factors present: absence of a prior disciplinary record, timely good faith effort to make restitution or to rectify the consequences of the misconduct, and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
 

 ^Turning to the issue of an appropriate sanction, the committee cited
 
 Louisiana State Bar Ass’n v. Hinnchs,
 
 486 So.2d 116 (La.1986), wherein this court held that a three-year suspension from the practice of law is appropriate in conversion cases in which
 

 the lawyer is guilty of at least a high degree of negligence in causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.
 

 Based on the ABA standards, as well as this court’s holding in
 
 Hinrichs,
 
 the committee recommended that respondent be suspended from the practice of law for three years.
 

 Respondent filed an objection to the hearing committee’s recommendation and submitted evidence of mitigating factors, which he claimed would require a reduction of the committee’s recommended sanction. The evidence included copies of checks from respondent’s trust account, which he claimed his employees forged; copies of receipts indicating he made restitution to clients and third parties as their identities were discovered; and his medical records regarding his cancer treatment in 2003 and 2004 (see note 2,
 
 supra).
 

 08-DB-047
 

 Count I
 

 In November 2006, Debra Woods hired respondent to handle a personal injury/worker’s compensation matter. Respondent did not file a lawsuit or a worker’s compensation claim on Ms. Woods’ behalf before the claim prescribed. He also | ¿failed to return Ms. Woods’ telephone calls or otherwise communicate with her. Furthermore, respondent did not properly supervise the minimal amount of work his non-lawyer assistants performed
 
 *751
 
 on Ms. Woods’ case.
 
 [3]
 

 In October 2007, Ms. Woods filed a disciplinary complaint against respondent. In response to the complaint, respondent falsely informed the ODC that he had been unable to locate Ms. Woods.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 5.3, 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), and 8.4(c).
 

 Count II
 

 In January 2007, Joshua Hughes hired respondent to handle two claims arising from a January 17, 2007 automobile accident. On May 1, 2007, Mr. Hughes’ insurance company issued a property damage check in the amount of $2,433.06 made payable to Mr. Hughes and respondent. Respondent endorsed the check but failed to inform Mr. Hughes of the check. As such, Mr. Hughes’ endorsement on the check 17was a forgery. On May 4, 2007, the check was cashed, but at that time, Mr. Hughes received no portion of the proceeds.
 
 [4]
 

 When Mr. Hughes confronted respondent, respondent claimed his secretary forged the endorsement and cashed the check.
 
 [5]
 
 However, the bank teller who cashed the check informed Mr. Hughes that respondent personally came into the bank with the check.
 
 [6]
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a), 1.15(d) (failure to timely remit funds to a client or third person), 5.3, 8.4(a), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).
 

 Count III
 

 On September 29, 2007, respondent was declared ineligible to practice law in Louisiana for failing to fulfill his mandatory continuing legal education requirements. On October 8, 2007, he was declared ineli
 
 *752
 
 gible to practice law for failing to pay his bar dues and the disciplinary assessment. Thereafter, on February 20, 2008, respondent was interimly suspended by this court. Accordingly, he has been ineligible to practice law since September 29, 2007.
 

 [¡Nonetheless, on November 6, 2007, Paul Beason, Jr. retained respondent in a contract dispute involving restoration work on Mr. Beason’s automobile.
 
 [7]
 
 Between November 6, 2007 and November 20, 2007, Mr. Beason paid respondent $750 in advanced fees.
 

 At the end of November 2007, Mr. Bea-son received some of his property from the automobile restoration company. However, respondent did not obtain a refund of the unused portion of the deposit Mr. Bea-son paid to the company or provide Mr. Beason with documentation of the work the company performed. By that time, respondent had become unavailable to Mr. Beason, failing to return his telephone calls or otherwise communicate with him. Respondent did not provide Mr. Beason with an accounting of the $750 advanced fee or refund the unearned portion of the fee.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(b) (failure to comply with MCLE requirements), 1.1(c) (failure to pay bar dues and the disciplinary assessment), 1.3, 1.4, 1.5(a) (charging an unreasonable fee), 1.5(f) (failure to account for or refund an unearned fee), 1.16(d) (obligations upon termination of the representation), 5.5 (engaging in the unauthorized practice of law), 8.4(b), and 8.4(c).
 

 Count IV
 

 In February 2006, Dat Luong hired respondent to handle two claims arising from a January 28, 2006 automobile accident. In March 2006, respondent received a property damage check in the amount of $2,660 made payable to himself and Mr. 1 ¡¡Luong. In December 2006, respondent received another property damage check on Mr. Luong’s behalf in the amount of $1,463 made payable to himself.
 

 Both checks were deposited into respondent’s bank account, and Mr. Luong’s endorsement on the March 2006 check was forged. Respondent did not inform Mr. Luong that he received the checks, and Mr. Luong received no portion of the proceeds from either check. Thereafter, respondent and/or his employees gave Mr. Luong false and misleading information about the checks.
 

 After July 4, 2007, Mr. Luong was no longer able to reach respondent by telephone. As such, he obtained new counsel, who contacted respondent via letter dated July 31, 2007. In response, respondent indicated to Mr. Luong’s attorney that his employee embezzled funds from him. On October 22, 2007, November 2, 2007, and January 15, 2008, Mr. Luong’s attorney forwarded copies of the two checks to respondent. Respondent did not respond to the letters or forward Mr. Luong’s funds.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a), 1.15(d), 5.3, 8.4(a), 8.4(b), and 8.4(c).
 

 Hearing Committee Report
 

 After considering the ODC’s deemed admitted submission in 08-DB-047, the hear
 
 *753
 
 ing committee determined that the factual allegations contained in the formal charges have been deemed admitted and proven by clear and convincing evidence. Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as follows: In the Woods matter, respondent violated Rules 1.1, 1.3, 1.4, and 8.1(a), but the committee did not address whether respondent violated Rules 5.3 and 8.4(c). In the Hughes matter, respondent violated Rules |in1.15(a), 1.15(d), and 8.4(c), but the committee did not address whether respondent violated Rules 5.3, 8.4(a), and 8.4(b). In the Bea-son matter, respondent violated Rules 1.1(b), 1.1(c), 1.4, 1.5(f), 5.5, and 8.4(c), but the committee did not address whether respondent violated Rules 1.3, 1.5(a), 1.16(d), and 8.4(b). In the Luong matter, respondent violated Rules 1.15(a), 1.15(d), and 5.3. However, with respect to Rules 8.4(a), 8.4(b), and 8.4(c), the committee noted that “[i]t is not established by the deemed admissions or by clear and convincing evidence in the record whether the forgery and misleading information were acts of Respondent, Respondent’s employees or both.” Thus, the committee found that the 8.4 rule violations were not proven by clear and convincing evidence in the Luong matter.
 

 The committee determined that respondent violated duties owed to his clients and the legal system. He acted intentionally, knowingly, and negligently, causing serious actual harm to his clients. Based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the baseline sanction is disbarment.
 

 Finding that respondent attempted to cover up his misconduct in the Hughes matter in his statements to both Mr. Hughes and the ODC, the committee determined the following aggravating factors are present: a dishonest or selfish motive, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and illegal conduct. Additionally, the committee found the aggravating factors of multiple offenses and substantial experience in the practice of law to be present. The only mitigating factor the committee found was the absence of a prior disciplinary record.
 

 lnThe committee further noted that respondent’s misconduct includes forgery, fraud, and conversion of client funds and, thus, meets the disbarment guidelines for conversion as detailed in
 
 Hinrichs, supra:
 

 In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
 

 Under these circumstances, the committee recommended that respondent be disbarred. Additionally, the committee recommended that respondent undergo a Lawyers Assistance Program substance abuse analysis and establish that he has been treated for and is recovering from any substance abuse problems prior to applying for readmission.
 
 [8]
 

 
 *754
 
 Neither respondent nor the ODC filed an objection to the hearing committee’s recommended sanction.
 

 Disciplinary Board Recommendation
 

 08-DB-028 & 08-DB-0Í7
 

 After reviewing these consolidated matters, the disciplinary board determined that the hearing committee’s factual findings in 08-DB-028 are not manifestly erroneous. Based on these
 
 findings, the
 
 board determined that respondent violated the Rules of Professional Conduct as follows: In Counts I and III, respondent violated Rules 1.15(a), 8.4(a), and 8.4(c). However, respondent did not violate Rules 1.15(b) | ls,and 1.15(c) because these rules concern depositing an attorney’s own funds or advance payments into a trust account, and there was no allegation that respondent deposited his own funds into his trust account or withdrew advance payments contrary to the rules. In Count II, respondent violated Rules 5.3 and 8.4(a), but he did not violate Rules 1.15(a), 1.15(b), or 1.15(c).
 

 In 08-DB-047, the board determined that the hearing committee’s factual findings are not manifestly erroneous except the finding that respondent did not commit forgery in the Luong matter. The board stated that the evidence in the record suggests that it is highly probable respondent forged signatures on Mr. Luong’s settlement checks. The board also noted two minor errors in the deemed admitted facts in the Luong matter and corrected these errors. Based on these findings, the board determined that respondent violated the Rules of Professional Conduct as follows: In the Woods matter, respondent violated Rules 1.1, 1.3, 1.4, 8.1(a), and 8.4(c), but he did not violate Rule 5.3. In the Hughes matter, respondent violated Rules 1.15(a), 1.15(d), 8.4(b), and 8.4(c), but he did not violate Rules 5.3 and 8.4(a). In the Reason matter, respondent violated Rules 1.1(b), 1.1(c), 1.3, 1.4, 1.5(f), 1.16(d), 5.5, 8.4(b), and 8.4(c). However, respondent did not violate Rule 1.5(a), as there was no allegation or evidence that the fee respondent charged was unreasonable. In the Luong matter, respondent violated Rules 1.15(a), 1.15(d), 8.4(b), and 8.4(c), but he did not violate Rules 5.3 and 8.4(a).
 

 The board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, and the legal profession. He caused serious harm to several clients and third parties by misappropriating and/or converting funds from his trust account. Furthermore, respondent forged his clients’ endorsements on settlement checks on at least two occasions. Relying on the ARA’s
 
 Standards for \ ^Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is disbarment.
 

 The board found the following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law, and illegal conduct. The board found only two mitigating factors, those being the absence of a prior disciplinary record and personal or emotional problems (cancer and subsequent treatment). However, the board assigned very little weight to the personal or emotional problems as there was no evidence that respondent’s cancer and treatment caused the misconduct.
 

 Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended that respondent be permanently disbarred. The board also recommended that respondent
 
 *755
 
 be ordered to pay restitution to his victims.
 

 Although neither respondent nor the ODC filed an objection to the board’s recommendation, on December 8, 2009, we ordered briefing addressing the issue of an appropriate sanction.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has | l4been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57.
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 In this consolidated matter, the hearing committees’ factual findings, as modified by the disciplinary board, are supported by the deemed admitted facts and documentary evidence present in the record. The facts and evidence indicate that respondent neglected legal matters, failed to communicate with clients, failed to account for or refund unearned fees, failed to timely pay third-party medical providers, commingled client funds with his own, converted client and third-party funds to his own use, failed to properly supervise his non-lawyer assistants, practiced law while ineligible to do so; forged clients’ signatures on settlement checks, and engaged in other dishonest or fraudulent conduct. Based on this conduct, respondent has violated the Rules of Professional Conduct as found by the board.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high | ^standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent knowingly and intentionally violated duties owed to his clients, the public, and the legal profession. His conduct caused actual harm to his clients and third-party medical providers. The baseline sanction for this type of misconduct is disbarment.
 

 Aggravating factors include the following: a dishonest or selfish motive, multiple offenses, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and illegal conduct. The sole mitigating factors are respondent’s lack of a prior disciplinary record and personal problems, although we, like the
 
 *756
 
 board, give little weight to the latter factor given the lack of supporting evidence in the record.
 

 Considering the misconduct in light of the aggravating and mitigating factors, we see no reason to deviate from the baseline sanction of disbarment.
 
 [9]
 
 Accordingly, 1 ir,we will disbar respondent. Additionally, we will order him to render a full accounting to his clients and make complete restitution to them.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record and the brief filed by the ODC, it is ordered that Gregory Van Judice, Louisiana Bar Roll number 24481, be and he hereby is disbarred, retroactive to February 20, 2008, the date of his interim suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall pay full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 . According to the ODC’s auditor, Ms. Bertrand’s settlement sheet stated she would be
 
 *749
 
 responsible for paying any and all medical bills.
 

 [2]
 

 . After the hearing committee issued its report, respondent submitted a limited amount
 
 *750
 
 of medical records to the disciplinary board. These records revealed that respondent was diagnosed with testicular cancer in late 2003 and underwent treatment. In October 2004, his family doctor indicated that he would need related cancer treatment and maintenance every two to three months for the next three years. As a result of the treatments and maintenance, respondent was receiving pain management from his family doctor.
 

 [3]
 

 . In a March 4, 2008 sworn statement to the ODC, respondent indicated that his assistant signed up Ms. Woods as a client while he was on medical leave, and he never had any contact with Ms. Woods. Respondent's assistant, who worked for him as a paralegal/office manager from July 2006 until January 2007, essentially corroborated respondent’s assertion, stating that she performed all of the bookkeeping for the law office, met with clients, worked die files, settled personal injury matters, and disbursed settlement funds. She also claimed that respondent was not working any of the cases, and it took "an act of congress to try and get him to sit still long enough to discuss anything with him.”
 

 [4]
 

 . The record reflects that respondent paid Mr. Hughes a total of $1,200 in restitution between October 2, 2007 and December 7, 2007.
 

 [5]
 

 . In a March 4, 2008 sworn statement to the ODC, respondent claimed that, in the last four years, four of his employees have misappropriated funds from his law office bank accounts, including forging signatures and cashing checks at the bank. However, respondent’s assistant from July 2006 until January 2007 informed the ODC that respondent was "going through pain management with a local doctor in town who was known for freely writing scripts” and would use money from the law office's operating accounting to pay for his prescriptions. She further stated that respondent withdrew between $200 and $500 from the operating accounting daily for his personal use and would transfer funds from the trust account to the operating account without justification.
 

 [6]
 

 . The ODC interviewed the bank teller, who verified that respondent came into the bank to cash the check.
 

 [7]
 

 . Mr. Beason paid an automobile restoration company a $4,000 deposit on September 20, 2005. Hurricane Rita struck on September 24, 2005, and the work was not completed. Mr. Beason hired respondent to recover his property, obtain documentation of any work performed, and obtain a refund of the unused portion of the deposit.
 

 [8]
 

 . The committee noted that the record suggests respondent may have a drug problem, possibly related to his cancer.
 

 [9]
 

 . The disciplinary board recommended that respondent be permanently disbarred. However, based upon our review of the record as well as the supplemental brief filed by the ODC, we are not convinced that Guideline 1 of the permanent disbarment guidelines, which suggests that permanent disbarment may be warranted in cases involving "repeated or multiple instances of intentional conversion of client funds with substantial harm," is applicable under the facts of this case. Although any instance of conversion is serious misconduct, it is well settled that we do not impose permanent disbarment lightly. Rather, permanent disbarment is reserved for those cases where the respondent's conduct convincingly demonstrates that he does not possess the requisite moral fitness to practice law in this state, thereby making it highly unlikely readmission would ever be granted.
 
 See, e.g., In re: Muhammad,
 
 08-2769 (La.3/4/09), 3 So.3d 458. Based on the record before us, we do not believe respondent's conduct rises to this level.