# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #017

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2017**, are as follows:

**PER CURIAMS:**

**2016-B-1848**     **IN RE: ASHTON R. O'DWYER**

> Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Ashton R. O'Dwyer, Louisiana Bar Roll number 10166, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

03/15/17

SUPREME COURT OF LOUISIANA

NO. 2016-B-1848

IN RE: ASHTON R. O'DWYER

ATTORNEY DISCIPLINARY PROCEEDINGS

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel, through Disciplinary Counsel Ad Hoc Mark Dumaine ("DCAH"),[1] against respondent, Ashton R. O'Dwyer, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.

**UNDERLYING FACTS**[2]

*Count I – The First Federal Court Complaint*

On September 19, 2005, respondent filed a class action lawsuit in the United States District Court for the Eastern District of Louisiana on behalf of victims of Hurricane Katrina. This action was assigned to Judge Stanwood Duval. A related case with a separate docket number became the "lead" case for all cases involving victims of Hurricane Katrina. Judge Duval then organized all of the federal court's Katrina cases into broad groups and assigned a Plaintiffs' Liaison Committee (PLC) to coordinate the litigation with all other plaintiffs' counsel, including

---

[1] As will be discussed in this opinion, respondent filed suit against Chief Disciplinary Counsel Charles Plattsmier and members of his staff. As a result, Mr. Plattsmier recused himself and his office from handling the matter, and this court appointed Mark Dumaine as DCAH.

[2] Although the formal charges against respondent are not set forth by count, we have enumerated the facts in that fashion for ease of reference.

respondent.[3]  During these proceedings, respondent's communications with the federal court and with other counsel led then-Chief Judge Helen Ginger Berrigan to lodge a disciplinary complaint against him with the federal court.  The April 2008 complaint cited numerous specific allegations of violations of the Rules of Professional Conduct that "are indicative although not exclusive of Mr. O'Dwyer's repetitive, unethical and unprofessional misconduct which has reached an intolerable level."  The complaint included the following allegations of misconduct against respondent:

- Violation of Rule 3.1 (meritorious claims and proceedings) – In 2005, respondent filed suit under a litany of federal and state environmental statutes without providing any factual basis whatsoever for his allegations. The federal court described this filing as a "56-page, practically illegible handwritten complaint full of 'irrelevant rhetoric.'"  In 2006, respondent brought two more cases in which he again presented legal theories unsupported by facts.  The federal court noted that respondent had refused to heed the court's previous warning not to employ a "buckshot" approach to jurisdiction and imposed sanctions of $7,058 against respondent.

- Violation of Rule 3.3 (false statement of material fact or law to a tribunal) – Respondent made false statements of fact to the tribunal in a 2008 motion for disqualification or recusal of Judge Duval when he alleged that Judge Duval had not disclosed his relationship with attorney Calvin Fayard.  In

---

[3] Meanwhile, in a separate federal lawsuit filed by respondent, he contended that, within twelve hours of filing the complaint in the Katrina class action litigation, the Louisiana State Police forcibly abducted him from his home in the middle of the night and delivered him to a temporary detention facility at the Union Passenger Terminal ("Camp Amtrak"), where he was shot with "bean bag rounds" from a twelve-gauge shotgun, blasted with pepper spray, and held in a small cage.  To this day, respondent believes there is a connection between what he describes as this "gangland-style 'hit'" ordered on him by "someone" and the "'treatment' I have enjoyed in the 'Victims of KATRINA' litigation, courtesy of the lawyers within the Louisiana Department of 'Injustice,' courtesy of the Plaintiffs' Liaison Committee, who are 'supposed' to be representing me and my clients, and possibly even 'courtesy' of Judge Duval..."

In yet another federal lawsuit, respondent alleged that former Chief Justice Catherine Kimball and Chief Disciplinary Counsel Charles Plattsmier were also involved in the conspiracy against him, because he made statements to the news media after Hurricane Katrina that embarrassed Justice Kimball.  According to respondent, Justice Kimball told Mr. Plattsmier and other state officials during a meeting on September 11, 2005 that "somebody has to shut that guy up [referring to respondent]; he's giving us all a bad name."  In response, Mr. Plattsmier allegedly stated that he knew some of respondent's law partners and would contact them to learn more about him.  Respondent claimed that these statements by Justice Kimball and Mr. Plattsmier led to actions by others that culminated in his September 20, 2005 incarceration at "Camp Amtrak" and his termination from his law firm on September 23, 2005.  Respondent's suit against Justice Kimball and Mr. Plattsmier was dismissed by the United States Fifth Circuit Court of Appeals in February 2009.

2

fact, Judge Duval had disclosed his relationship with Mr. Fayard in 2006, and respondent had made no objection.[4]

- Violation of Rule 1.4 (failure to communicate with a client) and Rule 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal) – Respondent failed to keep his clients reasonably informed about the status of their case when he refused to comply with an order requiring that he provide them with copies of the ruling denying his motion to disqualify Judge Duval. In response to the order, respondent filed a declaration stating that "this Court does not have the authority to require him to comply with such an order, which constitutes an unwarranted intrusion into the relationship between him and his clients, which is none of the Court's business."

- Violation of Rule 3.5(d) (engaging in conduct intended to disrupt a tribunal) – Respondent used abusive language toward the federal court in the following instances: (1) regarding Judge Duval's conclusions that a pleading filed by respondent was duplicative and frivolous and should be stricken from the record, respondent stated that Judge Duval acted "for an illicit purpose," (2) respondent stated that the PLC was "anointed" by Judge Duval, whom he implied was corrupt, (3) regarding two members of the PLC, respondent alleged that "these very same lawyers, who are 'supposed' to be representing the interests of 'the Class,' including me and my clients, HAVE BEEN SLEEPING WITH THE DEVIL, namely the State of Louisiana and its Department of 'Injustice,' all behind my back!" [Emphasis in original], (4) respondent stated that the Louisiana Attorney General was corrupt and that Judge Duval's opinion was prejudiced due to a conflict of interest, and (5) regarding Judge Duval's conclusions that a motion filed by respondent was untimely and legally insufficient, respondent contended that Judge Duval's conclusions were "disingenuous," and that Judge Duval failed to "do the right thing," and in fact "did the absolute wrong thing."

- Violation of Rule 4.4(a) (respect for rights of third persons) – Respondent filed motions for sanctions against other attorneys that were motivated by retaliatory intent and that were based on unfounded assertions. Respondent accused attorney Michael Riess of destroying evidence and implied that he is morally depraved. Respondent's motion for sanctions against the Louisiana Department of Justice (LDOJ) appeared to have had no substantial purpose beyond harassing and embarrassing the State. He provided no support for his contentions that the LDOJ would suborn perjury and commit obstruction of justice if permitted to remain in the case. Similarly, respondent filed a retaliatory motion for sanctions against Washington Group International, Inc., accusing the firm's counsel of lying and misrepresenting facts at a hearing.

- Violation of Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (threatening to present criminal or disciplinary charges solely to obtain an advantage in a civil matter) – Respondent threatened disciplinary sanctions against opposing counsel

---

[4] Respondent was ultimately found by the federal court not to have violated Rule 3.3 as alleged in connection with Judge Duval's disclosure of his relationship with Mr. Fayard.

without supporting his allegations with any facts. Respondent filed a motion for sanctions against Michael Riess in response to Mr. Riess' motion for sanctions against him. Respondent also used inappropriate, unprofessional language in an e-mail to Mr. Riess: "Glad to know that you condone 12-year-old girls giving birth to illegitimate children, and that you sanction killing, looting, drug use and possession of illegal firearms, as well as disrespect towards women." Similarly, in response to a motion for sanctions against him, respondent filed a motion to disqualify the LDOJ as counsel, alleging that "lawyers within the LDOJ will commit obstruction of justice, subornation of perjury and threaten further harm to and/or continue to intimidate plaintiff's counsel (which already has occurred)…"

Judge Berrigan's complaint was referred to Judge Ivan Lemelle to conduct proceedings and to submit findings and recommendations to the federal court *en banc* regarding what action, if any, should be taken against respondent. At the same time, respondent was ordered to show cause why discipline, including suspension or disbarment, should not be imposed.

Respondent filed a response to the show cause order, alleging that the disciplinary complaint filed against him was retaliatory in nature and "spawned by O'Dwyer's engaging in the following lawful, legitimate and totally ethical professional activity," namely filing the Katrina class action, filing a motion to disqualify certain attorneys from serving on the PLC, and filing a motion to disqualify Judge Duval. Respondent further denied that he engaged in any conduct that violated the Rules of Professional Conduct cited in the complaint. Indeed, respondent expressed no remorse for his conduct whatsoever.

After conducting a hearing in the matter, Judge Lemelle submitted his findings and recommendations to the *en banc* federal court in October 2008. Respondent then filed a motion to recuse Judge Lemelle. The motion was denied. Respondent was then given an opportunity to file objections to Judge Lemelle's report, which he did.

On November 7, 2008, the federal court *en banc* issued an order rejecting respondent's objections as without merit and adopting Judge Lemelle's findings that respondent violated the Rules of Professional Conduct as alleged in the

4

complaint filed against him. The *en banc* order suspended respondent from the practice of law before the federal court for five years, with two years on active suspension and the remaining three years on probationary status. As conditions of reinstatement, the *en banc* order required respondent to certify that he (1) has taken significant and meaningful steps to bring his practice and behavior in court up to the standards of ethics, civility, professionalism, and respect for the institutional role of the court that are expected of the members of the bar, (2) has not been accused of any other unethical or unprofessional conduct of any type within the preceding two years, (3) has paid all outstanding monetary sanctions, and (4) has successfully completed stress and anger management counseling/treatment with a licensed counselor in that area. The *en banc* order prohibited respondent from filing any further pleadings or documents with the federal court without first paying all outstanding monetary sanctions imposed against him and without first obtaining a judge's permission to do so. Finally, respondent was required to notify all clients of the *en banc* order, and to certify his compliance to the Chief Judge within twenty days. The *en banc* order cautioned respondent that "failure to comply with [the] Order may result in the imposition of further sanctions, including disbarment."

In response to the *en banc* order, respondent filed on November 11, 2008 a pleading captioned "Declaration of His Intentionally Contemptuous Non-Compliance with the Court's Order of 11/07/08." In this "Declaration," respondent advised the *en banc* federal court that "it may as well disbar him, forever, because he has no intention of ever complying" with the requirements of the suspension order. Indeed, respondent added, he would submit to the anger management classes required by the *en banc* order "only upon the condition that each Member of the Court first complete 'charm school.'" Respondent's "Declaration" was subsequently stricken from the court record as a violation of the

5

express terms of the *en banc* order, *i.e.*, the filing of a pleading without first paying all outstanding monetary sanctions imposed against him and without first obtaining a court order authorizing the filing.

*Count II – The Second Federal Court Complaint*

In December 2008, Chief Judge Sarah Vance lodged a second disciplinary complaint against respondent with the federal court. The complaint arose out of the "openly contemptuous statements" by respondent in his November 11, 2008 "Declaration," which were alleged to constitute further willful violations by respondent of both the *en banc* suspension order and the Rules of Professional Conduct, as well as the following additional matters:

- On November 12, 2008, respondent had his legal secretary hand-deliver three returns of service to the clerk of court to be filed in connection with a lawsuit respondent filed against Judge Duval.

- On November 13, 2008, respondent faxed a letter to the clerk of court requesting that transcripts of his disciplinary proceedings be placed on PACER to make the public aware of the federal court's "judicial and professional misconduct."

- On November 17, 2008, respondent hand-delivered a document to the chambers of Judge Vance, in which he requested records reflecting how each member of the federal court voted in connection with his disciplinary hearing. The document further states, "I really would like to know precisely what kind of 'Kool Aid' you and Judge Lemelle have been drinking. Whatever you do, please keep it away from the other Judges, ..." Respondent sent a copy of this letter to each member of the federal court.

- On November 19, 2008, respondent sent a facsimile of his November 17, 2008 letter to Judge Vance's chambers. The cover letter of the fax, addressed to the "'Honorable' Sarah S. Vance," states, "You and the other 'Black Robes' at 500 Poydras Street are denying me and my clients due process of law, and in the process violating 28 U.S.C. § 452, which is criminalized by 18 U.S.C. § 242. None of you enjoys immunity from criminal acts."

- On November 20, 2008, respondent hand-delivered to the clerk of court a motion styled "Plaintiff's Pro Se Motion for Leave to File Pleadings" in connection with his lawsuit against the State of Louisiana and other defendants. The motion restates that the *en banc* suspension order is a "violation of 28 U.S.C. § 452, which is criminalized by 18 U.S.C. § 242."

Respondent attached to his filing a motion to compel and a memorandum opposing a motion to dismiss filed by two of the defendants.

Each of these documents was alleged to violate the *en banc* suspension order, as well as Rules 3.4(c) and 3.5(d) of the Rules of Professional Conduct. In addition, respondent's submissions dated November 13, 19, and 20, 2008 were alleged to contain baseless allegations of criminal or unprofessional conduct by federal judges, in violation of Rule 8.2(a), which prohibits a lawyer from making a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the integrity of a judge.

Finally, the *en banc* order also required respondent to notify each of his clients in any case pending in the Eastern District of the *en banc* order, and to certify his compliance with the notification requirement within twenty days. Respondent was alleged to have violated the *en banc* order and Rule 3.4(c) by failing to certify to the Chief Judge in writing that he complied with the notification requirement within the allotted time.

Judge Vance's complaint was referred to Judge Lemelle to conduct proceedings and to submit findings and recommendations to the federal court *en banc* regarding what action, if any, should be taken against respondent. At the same time, respondent was ordered to show cause why discipline, including disbarment, should not be imposed. In February 2009, after receiving respondent's response to the show cause order, Judge Lemelle submitted his findings and recommendations to the *en banc* federal court. Respondent was then given an opportunity to file objections to Judge Lemelle's report, but he did not respond.

On March 4, 2009, the federal court *en banc* issued an order adopting Judge Lemelle's findings that respondent violated the Rules of Professional Conduct as alleged in the complaint filed against him. The federal court *en banc* ordered that respondent be disbarred from practicing law before that court. During the

7

disbarment period, respondent may not file pleadings or documents in any proceeding before the federal court (whether existing or sought to be initiated, including as a *pro se* litigant) without first paying all outstanding monetary sanctions imposed against him and without first obtaining a judge's permission to do so. Respondent is also required to notify all clients of the *en banc* order, and to certify his compliance to the Chief Judge within twenty-eight days. Respondent is eligible to file a petition for reinstatement after the fifth year of disbarment, subject to his fulfillment of certain conditions set forth in the *en banc* order.[5]

### *Count III – The McKernan Matter*

In December 2008, attorney Jerry McKernan[6] filed a complaint against respondent after he and all other counsel in the Katrina class action cases received an e-mail from respondent containing racially offensive statements. The DCAH alleges that by sending this e-mail to the Plaintiffs' Liaison Counsel, respondent knowingly violated the November 7, 2008 *en banc* order of the United States District Court and violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a), 8.4(c), and 8.4(d).

### *Count IV – The E-Mail Matters*

Over the course of several months between March and July 2009, respondent sent numerous e-mails to the DCAH in which he threatened frivolous civil rights and RICO lawsuits and used racial slurs, obscenities, and other unprofessional and discourteous language. The slurs and obscenities were directed to DCAH, opposing counsel, former Chief Justice Catherine Kimball, and Chief Disciplinary Counsel Charles Plattsmier. The DCAH alleges that by sending these

---

[5] These are generally the same conditions as were set forth in the earlier suspension order.

[6] Mr. McKernan died on April 20, 2012.

e-mails, respondent violated the following provisions of the Rules of Professional Conduct: Rules 3.1, 8.4(a), 8.4(c), and 8.4(d).

*Count V – The Unauthorized Practice of Law Matter*

On July 15, 2009, while respondent was suspended from the practice of law, he filed a pleading captioned "Defendant's Memorandum in Opposition to Plaintiff's Motion for Entry of Default Judgment" in the matter entitled "*In re Ocean-Oil Expert Witness, Inc. v. O'Dwyer*," bearing Docket Number 07-3129(B) in the United States District Court for the Eastern District of Louisiana. The motion was filed under the signature of respondent's cousin, attorney Joseph W.P. Hecker,[7] and contained disparaging and racially offensive language. When Chief Disciplinary Counsel Charles Plattsmier submitted an inquiry to Mr. Hecker regarding this pleading, respondent acknowledged by mail that he had written the pleading, took "full responsibility for the content of the language" in the pleading, and acknowledged that he had signed the pleading in the name of his cousin. The letter addressed to Mr. Plattsmier was replete with foul and obscene language.

The DCAH alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 3.1, 5.5(a) (engaging in the unauthorized practice of law), 8.4(a), 8.4(c), and 8.4(d).

*Count VI – The Lemelle Letter*

On July 27, 2009, respondent filed with the United States District Court for the Eastern District of Louisiana a letter in which he used racially demeaning, openly contemptuous, and derogatory language toward Judge Ivan Lemelle. As a result of this correspondence, the court issued an order barring respondent's access to the federal courthouse at 500 Poydras Street in New Orleans.

---

[7] Mr. Hecker died on April 24, 2012.

9

The DCAH alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 3.4(c), 3.5(d), and 8.2(a).

*Count VII – The Interim Suspension Matter*

Respondent was notified of his March 30, 2009 interim suspension by e-mail, facsimile transmission, and certified mail. He was also notified of his obligation under Supreme Court Rule XIX, § 26 to notify all clients, adverse parties, and opposing counsel of his suspension and his disqualification to act as a lawyer after the effective date of the court's order, and to return client property, refund unearned fees, and withdraw from pending representations. To date, respondent has failed to file the required affidavit of compliance, pursuant to Rule XIX, § 26(H), or otherwise inform the court that he has provided the required notifications.

The DCAH alleges that respondent's conduct violates Rule 8.5(a) (a lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction) of the Rules of Professional Conduct.

*Count VIII – The Criminal Matter*

On January 29, 2010, respondent sent an e-mail to the United States Bankruptcy Court for the Eastern District of Louisiana. At the time of the e-mail, respondent was the debtor in bankruptcy proceedings pending before Bankruptcy Judge Jerry Brown. The apparent purpose of respondent's e-mail was to obtain leave from Judge Brown to pay for his anti-depressant medication out of his most recent Social Security check. The full text of respondent's e-mail is as follows:

> Well, please convey to Judge Brown my belief that he can "try" to protect the CRIMINALS Duval, Lemelle and Dennis, but he can't protect them from themselves, and the "damage" is already done. As is the case with Judge Porteous, their impeachment is "just a matter of time."

10

> Also convey to Judge Brown a reminder that I have been totally without money since the weekend of January 8, 9, and 10, and that I have been without my anti-depressant medication, for which I have sought leave to pay Walgreen's from my most recent Social Security check, since last weekend. I could not sleep last night, which I attribute to the effects of abruptly stopping my medication on Sunday, the 24th (my pills "ran out," and I have no money to purchase more). **Maybe my creditors would benefit from my suicide, but suppose I become "homicidal?" Given the recent "security breach" at 500 Poydras Street, a number of scoundrels might be at risk if I DO become homicidal.** Please ask His Honor to consider allowing me to refill my prescription at Walgreen's, and allowing me to pay them, which is a condition for my obtaining a refill. Please communicate this missive to creditors and their counsel. Thank you. [Emphasis added.]

An employee of the Bankruptcy Court contacted the U.S. Marshals after receiving respondent's e-mail. Several hours later, respondent was taken into custody outside his home, at which time a loaded pistol was recovered from his possession. He was subsequently charged with the crime of interstate communications of a threat to injure another, in violation of 18 U.S.C. § 875.

The DCAH alleges that respondent's conduct violates the following provisions of the Rules of Professional Conduct: Rules 3.4(c), 3.5(d), 8.2(a), 8.4(b), 8.4(c), and 8.4(d).

**DISCIPLINARY PROCEEDINGS**

In November 2008, the Office of Disciplinary Counsel opened an investigative file concerning respondent's conduct. Because respondent had filed suit against Chief Disciplinary Counsel Charles Plattsmier and members of his staff, Mr. Plattsmier recused his office from handling the matter and this court appointed DCAH Mark Dumaine. On March 24, 2009, the DCAH filed a motion in this court seeking respondent's immediate interim suspension for threat of harm to the public. Respondent filed no response to the motion. On March 30, 2009, we

11

granted the motion and placed respondent on immediate interim suspension. *In re: O'Dwyer*, 09-0670 (La. 3/30/09), 6 So. 3d 744 (Kimball, C.J., recused).

In February 2010, the DCAH filed formal charges against respondent as set forth above. In addition to the alleged violations of the Rules of Professional Conduct, the DCAH also alleged that respondent violated his Lawyer's Oath and the Code of Professionalism of the Louisiana Supreme Court. The DCAH recommended permanent disbarment for respondent's misconduct.

At respondent's request, the disciplinary proceedings were stayed pending the disposition of the federal criminal charge against him for sending a threatening interstate communication to the United States Bankruptcy Court for the Eastern District of Louisiana. In September 2011, the United States Fifth Circuit Court of Appeals affirmed the dismissal of the indictment by the district court on the ground that respondent's speech was not a true threat toward the bankruptcy court and, therefore, was protected by the First Amendment.[8] *United States v. O'Dwyer*, 443 Fed. Appx. 18 (5th Cir. 2011) (unpublished).

Thereafter, the stay of the disciplinary proceedings was lifted and respondent filed an answer to the formal charges denying any misconduct as charged by the DCAH. He also pleaded various defenses to the allegations contained in the formal charges and demanded strict proof on each charge. For the next three years, pre-hearing and evidentiary issues (mostly raised by respondent) were ruled upon by the hearing committee, and occasionally by the disciplinary board and this court. The formal charge matter was finally set for hearing in November 2014.

---

[8] The Fifth Circuit concluded that based upon the language of respondent's e-mail, "and in light of his documented history of using coarse and hyperbolic language in prior court proceedings, that no reasonable jury could find that O'Dwyer's communication constitutes a true threat."

*Formal Hearing*

Respondent represented himself at the November 2014 hearing without benefit of counsel. Both respondent and the DCAH introduced volumes of documentary evidence. Respondent called Karl Florian Buchler as a witness (via telephone) and testified on his own behalf and on cross-examination by the DCAH. Additionally, the parties entered into various stipulations concerning the testimony of witnesses who were not called.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee adopted the factual findings of the federal court in its *en banc* order of November 7, 2008, as well as the factual findings of Judge Lemelle in his findings and recommendations issued on October 8, 2008. The committee also adopted the factual findings of the federal court in its *en banc* order of disbarment issued on March 4, 2009, as well as the factual findings of Judge Lemelle in his report and recommendation issued on February 10, 2009. In addition, the committee made the following factual findings:

On December 10, 2008, following his initial suspension from practice in the federal district court, respondent sent an e-mail to Plaintiffs' Liaison Counsel in the Katrina Levee Breaches litigation. This e-mail contained racially offensive statements.

On March 25, 2009, respondent sent an e-mail to DCAH in response to the petition for interim suspension for threat of harm to the public filed by DCAH. In the e-mail, respondent threatened to file frivolous civil rights and RICO lawsuits and used unprofessional language towards DCAH, which demeaned a race of people.

On March 27, 2009, respondent sent an e-mail to DCAH in which he had attached a copy of a civil rights lawsuit filed against Chief Disciplinary Counsel Charles Plattsmier, thereby threatening similar frivolous lawsuits against DCAH. This e-mail also contained racial slurs and other obscenities.

On March 30, 2009, respondent confirmed his receipt by mail of the court's order of interim suspension by replying to the court's Chief Deputy Clerk, and copying DCAH, that the Court was a "bunch of pigs" and "gutless dogs," and referred to then-Chief Justice Kimball with a sexual and offensive nickname.

On April 8, 2009, respondent sent an e-mail to DCAH denying the use of racially disparaging terms, yet including such terms along with other offensive terms, in this e-mail. Later the same day, he notified DCAH that he was a "pimp," a "puppet," an "Uncle Tom," and an "OREO."

On April 14, 2009, respondent sent an e-mail to DCAH with only a subject line using the same objectionable terms. Later the same day, respondent notified DCAH by e-mail that "I Just Can't Help Myself" and then launched into a string of racially offensive and obscene terms.

On April 15, 2009, respondent advised by e-mail sent to DCAH that he had developed yet another nickname for him. This nickname was intended to be equally offensive. Later that same day, respondent offered by e-mail to substitute a new offensive nickname for the prior offensive nickname.

On April 26, 2009, respondent e-mailed DCAH and used a string of racially offensive and obscene terms to communicate his message.

On April 27, 2009, respondent threatened by e-mail a frivolous civil rights complaint against DCAH and suggested that counsel examine similar pleadings respondent had already filed. He also referred to opposing counsel in these other proceedings as "scum" and "vermin."

On April 28, 2009, respondent threatened and advised DCAH via e-mail of the frivolous claims respondent would seek, including criminal sanctions for "misprision of a felony and accessory-after-the-fact." This e-mail also contained racial and other derogatory terms for DCAH, Justice Kimball, and Mr. Plattsmier.

On July 9, 2009, respondent sent an e-mail to DCAH to advise that he had been thinking about him and about a "new one" for him. He then continued with a racially offensive and crude message.

On July 15, 2009, respondent filed under the signature of his cousin, Joseph W.P. Hecker, a pleading captioned "Defendant's Memorandum in Opposition to Plaintiff's Motion for Entry of Default Judgment" in the matter entitled "*In re: Ocean-Oil Expert Witness, Inc. v. O'Dwyer*," C.A. No. 07-3129(B), United States District Court for the Eastern District of Louisiana. This memorandum contained disparaging and racially offensive remarks about Judge Lemelle. When Chief Disciplinary Counsel Plattsmier made inquiry into this pleading of Attorney Hecker, respondent acknowledged by mail that he took "full responsibility for the content of the language" and noted that the "language was mine" in the pleading. He further claimed that he had signed the pleading in the name of his cousin, Mr. Hecker, with Mr. Hecker's permission. The letter addressed to Mr. Plattsmier was replete with foul and obscene language. These acts, which included the drafting and signing of a legal motion for filing in federal court, were committed while respondent was interimly suspended from the practice of law.

On July 27, 2009, in open contempt of the district court's disbarment order, respondent caused to be hand delivered to Judge Lemelle a handwritten note, which he attached to a ruling by Judge Lemelle in a proceeding to which he was a party. In the note, he used racially demeaning, openly contemptuous, and derogatory terms towards Judge Lemelle. As a result of the correspondence, the

15

federal court issued an order barring respondent's access to the federal courthouse at 500 Poydras Street, New Orleans, Louisiana.

Respondent was notified of his March 30, 2009 interim suspension by the Louisiana Supreme Court by e-mail, facsimile transmission, and certified mail. He was also notified of his obligations under Supreme Court Rule XIX, § 26. The record in this matter shows that respondent has not filed the required affidavit demonstrating compliance with his obligations under Rule XIX, § 26.

On January 29, 2010, respondent sent an e-mail to the United States Bankruptcy Court for the Eastern District of Louisiana. The e-mail read: "Maybe my creditors would benefit from my suicide but suppose I become 'homicidal?' Given the recent 'security breach' at 500 Poydras Street, a number of scoundrels might be at risk if I do become homicidal." On the same day, respondent was taken into custody, and a loaded pistol was recovered from his possession. He was indicted and charged with the crime of interstate communications of a threat of injury to another pursuant to 18 U.S.C. § 875. The indictment was later dismissed by the federal district court. This ruling was upheld by the United States Fifth Circuit Court of Appeals on September 27, 2011.

Respondent has complied with none of the conditions surrounding the suspension and subsequent disbarment imposed upon him in federal court.

Instead of addressing what forms the basis of these formal charges – respondent's conduct during the Katrina litigation and his conduct during the disciplinary proceeding at hand – respondent instead has focused primarily on what he believes to be a conspiracy theory surrounding his arrest on September 20, 2005 and the "secret representation of the State" by Calvin Fayard and others in the Katrina litigation for an undetermined period of time prior to August 27, 2007.

Despite being disbarred from practicing in federal court and subsequently interimly suspended from the practice of law by the Louisiana Supreme Court,

16

respondent failed to change his unprofessional behavior before the hearing committee.

Based on the foregoing factual findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges, except that the committee did not find a violation of Rule 3.3 in connection with Judge Duval's disclosure of his relationship with Mr. Fayard. Further, the committee did not find a violation of Rule 8.4(b) in connection with the federal criminal charge against respondent for sending a threatening interstate communication to the Bankruptcy Court.

The committee determined that respondent violated duties owed to his clients, the public, the legal system, and the profession. His conduct was knowing and intentional and caused significant actual injury. Respondent misused the resources of the federal court and of the disciplinary agency by filing frivolous, harassing, non-meritorious, or otherwise inappropriate submissions. The federal court, the Louisiana Supreme Court, and the disciplinary agency had to devote their finite resources to the consideration of respondent's vexatious claims and submissions. Pursuant to the ABA's *Standards for Imposing Lawyer Sanctions*, the baseline sanction in this matter is disbarment.

The committee found the following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law (admitted 1971), and indifference to making restitution. The committee found that in mitigation, respondent has no prior disciplinary record and suffers from personal or emotional problems.

Notwithstanding that the applicable baseline sanction is disbarment, the committee determined that an upward deviation to permanent disbarment is warranted in this matter. Guideline 8 of Appendix E of Supreme Court Rule XIX

17

states that permanent disbarment may be imposed when a lawyer engages in the unauthorized practice of law "during the period of time in which the lawyer is suspended from the practice of law or disbarred." The record is clear that on July 15, 2009, after his March 30, 2009 interim suspension, respondent engaged in the unauthorized practice of law when he caused a pleading to be filed in federal court under the signature of his cousin, Joseph W.P. Hecker. When the Chief Disciplinary Counsel submitted an inquiry to Mr. Hecker regarding this pleading, respondent acknowledged by mail that he had written the pleading, took "full responsibility for the content of the language" in the pleading, and acknowledged that he had signed the pleading in the name of his cousin, purportedly with his permission. Such conduct constitutes the unauthorized practice of law and squarely falls under the parameters of Guideline 8.

Moreover, respondent's conduct throughout the Katrina litigation in federal court and during the disciplinary proceeding warrants permanent disbarment. Respondent was given the opportunity for readmission by the federal court if he complied with the conditions set out by the *en banc* district court in its orders of November 7, 2008 and February 10, 2009, but respondent was defiant in his failure to comply. In this matter, respondent has continued for ten years his pattern of flagrant disregard and contempt for the entire process; he even admitted at the hearing to filing "intentionally contemptuous pleadings."

The committee concluded:

> Respondent may be compared to the child who is sorry he got caught but not sorry for the infraction. Respondent has shown that when confronted with his own reckless and irresponsible, offensive and unprofessional words and deeds, he may on occasion apologize. But time and time again he has returned to his old ways with claims of great conspiracies, kangaroo courts, scorched earth pleadings and reckless use of insulting terms and derogatory language.

* * *

Though Respondent has testified that he is "going to try to be a changed man" and stated "I believe myself to be a changed" man, his actions belie his self-assessment. Respondent fails to acknowledge what the pleadings, orders, testimony and choice of language clearly demonstrate (even to non-medical or mental health professionals) that his anger bordering at times on rage [is] a serious concern for this hearing committee. For example, the transcript from the hearing held by this Committee on June 5, 2012 concerning Respondent's Motion for Disqualification reflects that Respondent had to be admonished for brandishing about his shillelagh, his action clearly inappropriate for a disciplinary proceeding. Anger management has [been] previously recommended but never pursued by the Respondent. The zeal with which he [represented] clients for more than forty years in his practice has now morphed into an anger that impairs his ability to act rationally and professionally as an attorney representing himself, his clients and the profession.

From the first pleading to his first comments in his opening statement at the hearing, Respondent has been focused on Katrina. **At the beginning of the hearing, the Respondent stated: "The case today is a referendum on the victims of the Katrina Litigation."** Like so many others, Respondent testified that his life in the years post-Katrina "has been hell for me." His passion for the Katrina litigants is palpable but so too is his unquenchable desire to find conspiracy at every turn. Respondent admits to being "emotionally involved." However, the fact that in a three hundred thirty-one (331) page transcript of the daylong hearing the word "Katrina" appears eighty-three (83) times (more than any other substantive word) demonstrates his obsession and inability to focus on the matter that was before the hearing committee. It was not lost on this committee that the only witness called by Respondent to testify was on the issue of the Katrina litigation and how he behaved in that litigation.

In conclusion, this Committee finds that Respondent's actions show his egregious lack of respect for the authority of the federal courts, the Louisiana Supreme Court, and the disciplinary authorities of this State. His conduct also shows his complete disregard for both the Lawyer's Oath and the Code of Professionalism of this State. Such conduct will not be tolerated by this Committee. Respondent's conduct, as well as his act of engaging in the unauthorized practice of law during his interim suspension, mandates this Committee to recommend that he be permanently disbarred from the

practice of law. [Emphasis in original; internal footnotes omitted.]

Respondent filed an objection to the hearing committee's report and recommendation of discipline. Respondent also objected to the committee's recommendation that he be assessed with the costs of this matter. The hearing committee chair denied the objection to costs as untimely filed.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. As such, the board adopted same. The board also determined that the committee correctly applied the Rules of Professional Conduct and adopted the committee's findings that respondent violated the rules as follows:

Rule 1.4(a)(3) – This rule states that "a lawyer shall keep the client reasonably informed about the status of the matter." The record shows that on February 22, 2008, Judge Duval issued an order denying respondent's motion to disqualify, and further ordered that copies of the ruling be provided to respondent's named clients. Respondent not only failed to provide his named clients with copies of Judge Duval's order, he filed a "declaration" stating that the court "does not have the authority to require him to comply with such an order, which constitutes an unwarranted intrusion into the relationship between him and his clients, which is none of the Court's business." By his refusal to inform his clients of the status of their legal matter, the board found respondent violated Rule 1.4(a)(3).

Rule 3.1 – This rule states, in pertinent part, that "a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith

argument for an extension, modification or reversal of existing law." Here, respondent brought and asserted frivolous actions. Beginning with the filing of his initial petition on September 19, 2005 in the Katrina class action litigation, and continuing thereafter, respondent filed pleadings containing unsupported allegations filed against a multitude of governmental agencies, elected officials, and others, under a litany of federal and state laws. His initial petition was a 56-page, sometimes illegible, handwritten complaint full of inappropriate and "irrelevant rhetoric," as described by Judge Duval in his order and reasons issued on July 19, 2006. Later, respondent filed complaints against federal, state, and local governmental defendants and others, under the general maritime law, as well as numerous state and federal environmental and other provisions of law without providing adequate factual bases. Despite repeated warnings, respondent continued to employ what Judge Duval had described as a "buckshot" approach to pleading in federal court.

In addition, respondent violated Rule 3.1 when he threatened sanctions against opposing counsel. Without providing any factual support, he alleged that attorney Michael Riess had destroyed evidence; that lawyers with the Louisiana Department of Justice would commit obstruction of justice and suborn perjury; and that lawyers for the Washington Group International had lied and misrepresented facts at a hearing. The pleadings show that these allegations had no basis in fact and were frivolous.

Furthermore, respondent also violated Rule 3.1 by his actions subsequent to the initiation of disciplinary proceedings by the DCAH. Rather than responding to the petition for interim suspension in an appropriate manner, respondent sent a series of vulgar and racist e-mail messages to the DCAH, threatening to advance frivolous civil rights, RICO, and numerous other claims. He also made threats and

21

asserted baseless claims against Judge Lemelle, the justices of this court, Chief Disciplinary Counsel Plattsmier, the DCAH, and others.

Based on the foregoing, the board found the record supports the conclusion that respondent violated Rule 3.1.

Rule 3.4(c) – This rule provides that "a lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." Respondent refused to comply with Judge Duval's February 22, 2008 order, repeatedly ignored warnings that the wholesale listing of jurisdictional bases without factual support would not be tolerated, and insisted on using inappropriate language after being sanctioned for doing so.

Respondent made plain his intention to disobey an obligation under the rules of a tribunal when, in response to the November 7, 2008 *en banc* order of the federal court suspending him from practice, he filed his motion styled "Ashton O'Dwyer's 28 U.S.C. § 1746 Declaration of His Intentionally Contemptuous Non-Compliance with the Court's Order of 11/07/08 Which is Directed to the Court *En Banc*." In the filing, respondent declared that "he has no intention of ever complying" with the order's requirements that he pay all outstanding monetary sanctions against him and that he obtain stress and anger management treatment. He flippantly asserted that he would "agree to submit to … counseling/treatment, only upon the condition that each Member of the Court first complete 'charm school.'" Respondent concluded by stating that "the Court *en banc* is invited to disbar Respondent, forever."

Despite the express terms of the November 7, 2008 *en banc* order placing him on suspension, respondent continued mailing, faxing, and hand delivering documents to the federal court and to individual judges without first paying his outstanding monetary sanctions, or obtaining permission from a member of the

22

court, in violation of the terms of the order. On July 27, 2009, in open contempt of the March 4, 2009 order of disbarment, respondent caused to be hand delivered to Judge Lemelle a handwritten note containing an outrageous racial slur directed at the judge, resulting in the court's issuance of an order barring respondent from entering the federal courthouse.

Based on the foregoing, the board found the record supports the conclusion that respondent violated Rule 3.4(c).

Rule 3.5(d) – This rule states that "a lawyer shall not engage in conduct intended to disrupt a tribunal." The record is replete with examples of respondent's intent to disrupt proceedings in federal court through his unprofessional, profane, threatening, and racially offensive communications and pleadings.

As previously noted, leading up to, during, and since his disbarment from practice in federal court, respondent repeatedly ignored court orders and admonitions by filing unsupported and duplicative pleadings, using offensive and abusive language. He challenged the authority, competency, and integrity of the federal court, stating that the court's actions were "disingenuous" and done for an "illicit" purpose. Respondent filed the previously mentioned "declaration" stating that an issue was "none of the court's business." He made unsupported and inflammatory allegations regarding the conduct of other attorneys, using terms such as "corrupt," "anointed," and "sleeping with the devil." Indeed, he openly stated his contempt for the federal court and declared that he had no intention of ever complying with its order of suspension, and set about on a course of ever increasing defiance and lack of respect for the orderly administration of justice. Respondent continued to willfully violate the *en banc* order and the Rules of Professional Conduct by sending documents to the federal court without satisfying the conditions of the order. Then, on July 27, 2009, respondent hand delivered to

the federal court the previously mentioned letter addressed to Judge Lemelle containing profanity and an outrageous racial slur, which led to the issuance of the order barring his access to the federal courthouse.

Based on the foregoing, the board found the record supports the conclusion that respondent violated Rule 3.5(d).

Rule 4.4(a) – This rule provides that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." Respondent engaged in retaliatory attempts to sanction other attorneys and parties with frivolous motions and accusations. He sought sanctions against attorney Michael Riess, accusing him of destroying evidence and implying that he was morally depraved. Respondent's assertion that attorneys with the Louisiana Department of Justice would suborn perjury and obstruct justice was unsupported and appeared to serve no substantial purpose beyond harassing and embarrassing the state. Similarly, respondent's motion for sanctions against Washington Group International, accusing the firm's counsel of lying and misrepresenting facts, appeared to be retaliatory in nature. Respondent openly declared that "no one fires a shot across my bow without getting a broadside back," indicating that respondent's motions for sanctions were motivated by retaliatory intent.

Based on the foregoing, the board found the record supports the conclusion that respondent violated Rule 4.4(a).

Rule 5.5(a) – This rule provides that "a lawyer shall not practice law in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Respondent was placed on interim suspension by this court on March 30, 2009. He was suspended from practice in the Eastern District on November 7, 2008 and was subsequently disbarred by that court on March 4, 2009.

24

Both the *en banc* order suspending respondent from practice and the order of disbarment prohibited respondent from filing pleadings or documents in any Eastern District proceeding, existing or sought to be initiated, including as a *pro se* litigant, without first paying monetary sanctions and obtaining an order from a member of the court. Further, the disciplinary orders also mandated that respondent notify his clients of the issuance of the orders and that respondent certify his compliance to the Chief Judge.

Although purportedly submitted by attorney Joseph Hecker, respondent's cousin, the committee found that respondent drafted and caused to be filed a legal pleading in which he offered defenses, asserted that the court lacked subject matter jurisdiction, and sought to disqualify Judge Lemelle. The pleading contained threatening, disparaging, and racially offensive remarks about Judge Lemelle. When the Chief Disciplinary Counsel made inquiry into this pleading of Attorney Hecker, respondent admitted that he had written the pleading, taking "full responsibility for the content of the language." Respondent also admitted that he had signed the pleading in the name of his cousin, allegedly with his cousin's permission.

Respondent's drafting and signing of the pleading for submission to the federal court constituted the unauthorized practice of law in violation of Rule 5.5(a). Respondent admitted he drafted the pleading and filed it. At the time he did so on July 15, 2009, he was on interim suspension by this court and had been disbarred by the federal court; he was also prohibited from filing pleadings in the federal court, whether *pro se* or otherwise. By his actions, he sought to deceive the federal court by using his cousin's name as a subterfuge so that he could continue to draft and file pleadings after he had been disbarred in the Eastern District and after he had been interimly suspended by this court.

25

Rule 8.2(a) – This rule provides in pertinent part that "a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer..." Respondent repeatedly made unsupported and reckless statements impugning the integrity of the federal judges. For example, respondent described the judges or their rulings as "done for an illicit purpose," "disingenuous," or "the fix is in," calling into question the integrity of the court. Based on the foregoing, the board found the record supports the conclusion that respondent violated Rule 8.2(a).

Rules 8.4(a)(c)(d)(g) and 8.5(a) – Rule 8.4 states that it is professional misconduct for a lawyer to (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another, (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, (d) engage in conduct that is prejudicial to the administration of justice, and (g) threaten to present criminal or disciplinary charges solely to obtain an advantage in a civil matter. Rule 8.5(a) subjects a lawyer admitted to practice in this jurisdiction to the disciplinary authority of the jurisdiction.

Respondent clearly engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation by his unrelenting misuse and abuse of the legal system, filing frivolous pleadings containing unsupported and inflammatory allegations, misrepresenting the conduct of opposing counsel, using offensive, racist, and vulgar language, and impugning the integrity of the judiciary and disciplinary authorities. Respondent acted with deceit when he sought to mislead the federal court by using his cousin's name as a ploy so that he could continue to file pleadings after he had been disbarred from practice in the Eastern District and after he had been placed on interim suspension by this court. He hurled threats of civil,

criminal, and disciplinary proceedings at judges, opposing counsel, and disciplinary authorities. Furthermore, though respondent was notified of his obligations under Supreme Court Rule XIX, § 26, relative to his duties to notify clients, co-counsel, and opposing counsel of his status and contact information, he failed to do so in violation of Rule 8.5(a).

Based on the foregoing, the board found the record supports the conclusion that respondent violated Rules 8.4(a)(c)(d)(g) and 8.5(a).

The board likewise adopted the committee's conclusion that respondent did not violate Rules 3.3 and 8.4(b). The board agreed that there was not clear and convincing evidence that respondent misrepresented facts regarding certain disclosures made by Judge Duval regarding the judge's relationship with attorney Calvin Fayard, and therefore found that he did not violate Rule 3.3. The board also noted that there was no violation of Rule 8.4(b) in that the United States Fifth Circuit Court of Appeals upheld the dismissal of the indictment against respondent for the crime of interstate communications of a threat to injure another.

The board determined that respondent violated duties owed to his clients, the public, the legal system, and the profession. His conduct was knowing and intentional, and caused significant actual injury. Addressing his frivolous, harassing, and inappropriate submissions and his continuing base and unprofessional behavior has required substantial and unnecessary expenditures of the resources of the federal court, opposing parties, and the disciplinary system. His outrageous conduct is the type that undermines the public's confidence in the legal system and the legal profession. The applicable baseline sanction is disbarment.

The board found the following aggravating factors are supported by the record: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, substantial experience

27

in the practice of law, and indifference to making restitution. The board found the following mitigating factors are supported by the record: absence of a prior disciplinary record and personal or emotional problems.

Although the baseline sanction in this matter is disbarment, the board agreed with the hearing committee that permanent disbarment is warranted pursuant to Guideline 8 of the permanent disbarment guidelines. Moreover, the board found the record contains evidence of conduct so egregious that nothing less than permanent disbarment would be appropriate:

> A review of only a few of the vast number of pleadings, email messages and letters authored by Respondent and the vile, racist and threatening language therein, illustrates that Respondent must be permanently disbarred. Respondent has shown [a] pattern of flagrant disregard and contempt for the legal system and the disciplinary process. His conduct has resulted in a huge burden on the time and resources of the federal court, opposing counsel, and the disciplinary system. He must not be allowed to continue to tarnish the image of the legal profession and undermine the public's confidence in the legal system. It is abundantly clear he does not possess the moral fitness to hold a license to practice law in this state, and should not be allowed the opportunity to return to the practice of law in the future.

Based on this reasoning, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be assessed with all costs and expenses of the disciplinary proceeding.

Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has

been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The voluminous record of this matter clearly supports the well-reasoned factual findings of the hearing committee. It suffices to say the undisputed evidence presented by the DCAH, the majority of which consisted of respondent's own pleadings and other communications to courts, lawyers, and the disciplinary agency, establishes a panoply of serious professional violations. Among other things, respondent unquestionably violated Rule 3.1 by asserting frivolous actions, including bringing baseless proceedings against the DCAH. Similarly, he engaged in retaliatory conduct against other attorneys and parties in violation of Rule 4.4(a). He violated Rule 3.4(c) by knowingly and intentionally disobeying orders of the federal court. Additionally, he violated Rule 3.5(d) by disrupting proceedings in federal court through his unprofessional and racially offensive communications and pleadings.

Finally, we find the record supports the hearing committee's determination that respondent engaged in the unauthorized practice of law in violation of Rule 5.5(a) based on the filing of a pleading in federal court after respondent was already disbarred in that court. Although this pleading was purportedly submitted by respondent's now-deceased cousin, attorney Joseph Hecker, the committee made a factual finding that respondent drafted the pleading and caused it to be filed. We cannot say this factual finding is clearly wrong.[9]

---

[9] In his brief filed in this court, respondent now disputes his earlier admission, claiming he was "mistaken" when he stated he signed his cousin's name to the pleading and now states his cousin, acting as respondent's counsel, actually signed the pleading. However, he presents no

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the profession. His conduct caused significant injury, including the unnecessary waste of judicial and professional resources. Disbarment is the baseline sanction for this type of misconduct. The record supports the aggravating and mitigating factors found by the disciplinary board.

Turning to the issue of an appropriate sanction, we agree that respondent's conduct warrants permanent disbarment. Guideline 8 of the permanent disbarment guidelines suggests that permanent disbarment is appropriate when a lawyer engages in the practice of law after being suspended or disbarred. As discussed above, the committee made a factual determination that respondent was responsible for the drafting and filing of a pleading in federal court after he was prohibited from practicing law. This conduct meets the requirements of Guideline 8.

Furthermore, even without reference to the guidelines, we would find permanent disbarment would be appropriate in this case. It is well settled that the

---

evidence in support of his assertion. Moreover, regardless of who actually signed the pleading, the record supports the hearing committee's finding that the pleading was drafted and submitted under respondent's direction in an attempt to avoid the order prohibiting him from practicing law.

guidelines are illustrative in nature and do not constitute an exclusive list of conduct for which an attorney may be permanently disbarred. S*ee In re: Kirchberg*, 03-0957 (La.9/26/03), 856 So.2d 1162.

Respondent's shocking disregard for his obligations as a member of the bar of this state demonstrate why he must forfeit any right to ever return to practice. The record is replete with respondent's vile and racially-derogatory communications (many of which are too offensive to repeat in this opinion) made to members of the judiciary and the bar. He has filed unsupported and duplicative pleadings, using offensive and abusive language, and has made baseless challenges to the authority, competency, and integrity of the federal court. Respondent has consistently refused to make any significant attempt to acknowledge the wrongful nature of his acts, and he continues to portray himself as the "victim" in these proceedings.

We have often pointed out we do not impose permanent disbarment lightly. *See In re: Morphis*, 01-2803 (La.12/4/02), 831 So. 2d 934. Rather, permanent disbarment is reserved for those cases where the attorney's conduct convincingly demonstrates that he or she does not possess the requisite moral fitness to practice law in this state. *In re: Petal*, 10-0080 (La.3/26/10), 30 So. 3d 728; *In re: Muhammad*, 08-2769 (La.3/4/09), 3 So. 3d 458. Even a cursory glance at the record of these proceedings indicates respondent, through his own words and actions, has demonstrated with perfect clarity that he does not have the moral fitness to exercise the privilege of practicing law in this state. In order to protect the public and maintain the high standards of the legal profession in this state, respondent must be permanently disbarred.

Accordingly, we will adopt the board's recommendation and permanently disbar respondent. We will further impose all costs of these disciplinary proceedings against respondent.

31

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Ashton R. O'Dwyer, Louisiana Bar Roll number 10166, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.